UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**AMERICAN FREEDOM DEFENSE
INITIATIVE, PAMELA GELLER, and
ROBERT SPENCER,**

            Plaintiffs,

v.

CASE NO. 10-12134
HONORABLE DENISE PAGE HOOD

**SUBURBAN MOBILITY AUTHORITY
for REGIONAL TRANSPORTATION
("SMART"); GARY L. HENDRICKSON,
individually and in his official capacity as
Chief Executive of SMART, JOHN HERTEL,
individually and in his official capacity as
general manager of SMART and BETH
GIBBONS, individually and in her official
capacity as Marketing Program Manager
of SMART,**

            **Defendants.**
_____/

### ORDER GRANTING PLAINTIFFS' PRELIMINARY INJUNCTION

**I.**      **INTRODUCTION**

      This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction **[Docket No. 8, filed on June 17, 2010]**.  Defendants filed a response to Plaintiffs' motion on July 2, 2010 **[Docket No. 10]**.  Plaintiffs replied on July 9, 2010 **[Docket No. 14]**, and a hearing was held before the Court on July 12, 2010.

**II.**     **STATEMENT OF FACTS**

      Plaintiff American Freedom Defense Initiative ("FDI") is an organization which

1

describes its objective as "go[ing] on the offensive when legal, academic, legislative, cultural, sociological, and political actions are taken to dismantle our basic freedoms and values." (Complaint ¶ 6). Plaintiff Pamela Geller is FDI's Executive Director, and Plaintiff Robert Spencer is FDI's Associate Director. (Complaint ¶¶ 9-10). Plaintiffs promote the organization's objectives by "*inter alia*, sponsoring anti-jihad bus and billboard campaigns, which includes seeking advertising space on SMART vehicles." (Complaint ¶ 8). Defendant SMART is an instrumentality of the State of Michigan, the mission of which is to operate public transportation throughout the four southeastern-most counties in Michigan (Wayne, Oakland, Macomb, and Monroe Counties).[1] (Defs.' Resp. Br. at 5). Defendant Hendrickson is the Chief Executive of SMART, Defendant Hertel is the General Manager of SMART, and Defendant Gibbons is the Marketing Program Manager of SMART. (Complaint ¶¶ 12-14).

Plaintiffs state that SMART allows advertisements regarding a wide range of subject matters on the outside of its vehicles including, but not limited to, commercial, non-commercial, political, and religious advertisements. (Complaint ¶ 17). SMART maintains that it sells advertising on the interior and exterior of its vehicles to enhance revenue for the purpose of operating public mass transportation. (Defs.' Resp. Br. at 5). This advertising is sold by SMART's exclusive agent, CBS Outdoor, Inc. ("CBS"). *Id.*

Plaintiffs contend that SMART has a policy under which it "has intentionally dedicated its advertising space on its vehicles to expressive conduct." (Complaint ¶ 16). Plaintiffs claim that they submitted a request to advertise on SMART vehicles. Plaintiffs allege that, despite the

---

[1] The parties stipulate that Defendant SMART is a government agency bound by the First and Fourteenth Amendments to the United States Constitution.

fact that their advertisement complied with the procedural requirements, they entered a contract with SMART's advertising agency, and they submitted all required forms and payments, Defendants denied their request, in violation of the First and Fourteenth Amendment rights. (Complaint ¶¶ 20-21)

Defendants maintain, pursuant to their contract with CBS ("Contract"), they have a "Restriction on Content" (hereinafter referred to as "content restriction policy" or "policy"), which contains the following prohibitions:

> 1. Political or political campaign advertising.
> 2. Advertising promoting the sale of alcohol or tobacco.
> 3. Advertising that is false, misleading, or deceptive.
> 4. Advertising that is clearly defamatory or likely to hold up to scorn or ridicule any person or group of persons.
> 5. Advertising that is obscene or pornographic; or in advocacy of imminent lawlessness or unlawful violent action.

Contract, Section 5.07(B). Defendants contend that they have actively enforced this policy, and reject any and all advertising deemed to violate the policy. Upon receiving Plaintiffs requested advertisement, Defendants found it to be in violation of the policy, constituting political advertising and likely to hold up to scorn and ridicule a group of persons. Defendants deny ever having entered into a contract with FDI.

### III.   APPLICABLE LAW & ANALYSIS

Plaintiffs seek a preliminary injunction, enjoining Defendants from violating their First Amendment rights to freedom of speech. Four factors must be balanced and considered before the Court may issue a preliminary injunction pursuant to Fed.R.Civ.P. 65(b): (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and

(4) whether the injunction would serve the public interest. *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989). "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996).

### A.     Likelihood of Success on the Merits

Plaintiffs state that their advertisements, which they characterize as signs expressing religious freedom, clearly constitute protected speech. Defendants, characterizing Plaintiffs' speech as political and anti-Islam advertisement, do not expressly argue that Plaintiffs' speech is unprotected, but rely on the Supreme Court's finding that "it is undeniable of course, that speech which is constitutionally protected against state suppression is not thereby accorded a guaranteed forum on all property owned by the state." *Capital Square Review & Advisory Bd v. Pinette*, 515 U.S. 753, 761 (1995). The extent to which speech is protected depends on the nature of the relevant forum. *Id.*

"The extent to which the government may regulate speech in a particular forum depends on the nature of the forum." *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841 (6th Cir. 2008). "The [Supreme] Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for [expressive] purposes." *Cornelius v. NAACP Legal Defense Fund,* 473 U.S. 788, 800. "In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of a

4

certain subject." *Marlin v. Dist. of Columbia Bd. of Elections and Ethics*, 236 F.3d 716, 718 (D.C. Cir. 2001). The government does not create a designated public forum by inaction or by permitting limited disclosure, but by intentionally opening a nontraditional forum for public disclosure. While operating a designated public forum, "the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includable subject." *Cornelius,* 473 U.S. at 806.

Protected speech on property determined to be either a traditional public forum or a designated public forum receives the highest level of protection. "[S]peakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest . . . . Similarly, when the government has intentionally designated a place or means of communication as a public forum speakers cannot be excluded without a compelling governmental interest." *Id*. at 800. Protected speech on property determined to be a nonpublic forum receives significantly less protection. In a nonpublic forum, "the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speakers view." *Perry Educ. Ass'n v. Perry Local Educators*, 460 U.S. 37, 46 (1983).

Plaintiffs argue that SMART's advertising space constitutes a designated public forum, "created by government designation of a place or channel of communication for use by certain speakers, or for the discussions of certain subjects." *Cornelius*, 473 U.S. at 802. The government's intent is discerned by examining the practice and the policy of the government to determine "whether it intended to designate a place not traditionally open to assembly and debate

5

as a public forum." *Id*. Plaintiffs maintain that Defendants have designated its advertising space as a public forum based on explicit policy and in practice. Plaintiffs quote, in part, SMART's advertising guidelines stating that "First Amendment free speech rights require that SMART not censor free speech and because of that, SMART is required to provide equal access to advertising on our vehicles." Ex. H to Pls.' Mot. for Prelim. Inj. Defendants counter this argument, stating that the document Plaintiffs quote continues on to read "SMART has in place advertising guidelines for which all advertisements are reviewed against. Any such advertising *which does not violate the SMART advertising guidelines* or the law must be posted." *Id.* (emphasis added). Defendant SMART maintains that it runs advertisements primarily for the purpose of generating revenue in support of its mission to provide public transportation, not to encourage public debate or discussion.

To further support their argument, Plaintiffs reference an advertisement run by an atheist organization reading: "Don't believe in God? You're not alone." Defendants characterize the advertisement as "purely religious" in nature, and not in violation of SMART's content restriction policy. Further, the advertisement was not inviting debate over the existence of God, but rather promoting the organization sponsoring the advertisement. However, the policy does not delineate what renders an advertisement as "purely religious," as opposed to political or likely to hold up to scorn or ridicule any person or groups of persons, both of which are prohibited by Defendant SMART's content restriction policy. Nonetheless, Plaintiffs do not have a high likelihood of success in demonstrating that, by running this advertisement promoting the Detroit Area Coalition of Reason, SMART intended to create a space open to assembly and/or debate.

Plaintiffs do not have a high likelihood of success in establishing SMART's advertisement space as a designated public forum. However, facts may develop establishing that the advertising space is a nonpublic forum. A nonpublic forum is public "property which is not by tradition or designation a forum for public communication." *Perry Educ. Ass'n,* 460 U.S. at 46. Even Defendants state that "[i]t is clear that SMART has established a nonpublic forum." Defs.' Resp. Br. at 11.

In analyzing whether a First Amendment violation has occurred in a nonpublic forum, the Court employs a rational basis review, rather than strict scrutiny. *See id.* "Control over access to nonpublic forum can be based on subject matter and speaker identity, so long as distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral; i.e., government's decision to restrict access in nonpublic forum need only be reasonable." *Cornelius*, 473 U.S. at 806; *see also Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. at 819, 820 (The regulation of speech in a nonpublic forum must be "reasonable in light of the purposes served by the forum."). The decision "need not be the most reasonable or the only reasonable limitation . . . . [A] finding of strict incompatability between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated." *Cornelius*, 473 U.S., at 808 (1985).

In this case, SMART's stated mission is to provide public transportation throughout Wayne, Macomb, Monroe, and Oakland counties. Defendants argue that, given this mission, their content restriction policy is both reasonable and constitutional. Whether a policy is reasonable is a question of fact. There is a strong likelihood that Plaintiffs could succeed in demonstrating that Defendant's decision not to run the advertisement was not reasonable, but

rather arbitrary and capricious.  Defendants argue that their policy is viewpoint neutral.  However, there is nothing in the policy that can guide a government official to distinguish between permissible and impermissible advertisements in a non-arbitrary fashion.  Defendant Beth Gibbons testified that there were no other written guidelines or manuals available, aside from the guidelines found in the contract between SMART and CBS.  She further testified that, while the atheist advertisement was purely religious, rather than political, there was no manual or language that set forth what distinguished a political advertisement from a religious advertisement. Under Sixth Circuit law, "[t]he absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors." *United Food & Commercial Workers Union, Local 1099, et al. v. Southwest Ohio Reg'l. Transit Auth.*, 163 F.3d 341, 359).  "[T]he limits the [government] claims are implicit in its law [must] be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice."  *Id.* (internal citations omitted).

As Defendant Gibbons testified in her capacity as an authorized representative of SMART pursuant to Fed. R. Civ. P. 30(b)(6), the policy purporting to restrict content in this case does not distinguish between political or non-political advertising, but each advertisement is reviewed independently for such a determination to be made.  When the advertisement at issue was initially reviewed, the determination was made that it was a political advertisement. However, when asked about the advertisement during the hearing, Defendant Gibbons testified that the content of the advertisement itself was not political.  Such an inconsistency illustrates the arbitrary decision-making allowed under Defendant SMART's policy.

Defendants argue that their case is analogous to *Lehman v. City of Shaker Heights*, in which the Court held that the city's refusal to accept political advertising did not result in a First Amendment violation. 418 U.S. 298 (1974). This case is distinguishable. First, the advertisement in *Lehman* was clearly political advertising, promoting a specific candidate for an upcoming election. Second, there was "uncontradicted testimony at the trial that during the 26 years of public operation, the Shaker Heights system, pursuant to city council action, had not accepted or permitted any political or public issue advertising on its vehicles." *See id.* at 301-2. Additionally, the advertisements in *Lehman* were to be inside the vehicles, where the riders would be a captive audience. *See id.* at 302. Based on the factual distinctions between *Lehman* and the instant case, Defendants cannot rely on it to establish that their refusal to accept Plaintiffs' advertising was constitutional.

Given the arbitrary nature of SMART's policy and decision-making practices, Plaintiffs have a high likelihood of succeeding on the merits with respect to whether the restriction of their speech was unreasonable in this case.

### B.    Irreparable Injury

The Supreme Court has stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Due to Plaintiffs' likelihood of success on the merits, they also prevail on whether they will suffer irreparable harm. *See Connection Distrib. Co. v .Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("[T]o the extent [plaintiff] can establish a likelihood of success on the merits of its First Amendment claim, it also has

established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights.").

### C. Harm to Others

Defendants maintain that SMART's advertising revenue could be compromised if SMART opens its advertising space to unregulated public debate, resulting in financial harm to SMART and its riders. However, granting this preliminary injunction would not have the effect of transforming SMART's nonpublic forum to a designated forum, open to unregulated debate. Beyond speculation, SMART has not demonstrated that the proposed advertisements will result in decreased ridership. Moreover, SMART may not reject advertisements solely because those advertisements have the potential of affecting ridership. *See United Food*, 163 F.3d at 360 (finding a ban on advertisements that would adversely affect ridership unconstitutional as overbroad, and compromising First Amendment protections). The Court finds that the Plaintiffs' likelihood of success, the potential harm to Plaintiffs, and the potential harm to the public interest outweigh the speculative harm to SMART.

### D. Public Interest

Defendants argue that the impact on the public from imposing the advertisements on a "captive audience" could "further racial tensions, increase violence, and create untold other negative reactions." Defs. Resp. Br. at 16. In this case, however, the advertisement would run on the outside of the bus, and there would be no "captive audience." Further, "the purported concern to avoid controversy excited by particular groups may conceal a bias against the viewpoint advanced by the excluded speakers." *Cornelius*, 473 U.S. at 812. Based on Plaintiffs likelihood of success on the merits, it is in the public's interest to grant the preliminary

injunction.  The Sixth Circuit has stated "it is always in the public's interest to prevent the violation of a party's constitutional rights."  *G &V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

## IV.   CONCLUSION

For the reasons stated above,

IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction **[Docket No. 8, filed on June 17, 2010]** is GRANTED.

IT IS FURTHER ORDERED that Defendants' are preliminarily enjoined from applying heir speech restriction to Plaintiffs' speech.

IT IS FURTHER ORDERED that this matter is set for a status conference on Monday, April 11, 2011 at 2:00 p.m.


                                                                   s/Denise Page Hood
                                                                   Denise Page Hood
                                                                   UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 31, 2011, by electronic and/or ordinary mail.

                                                                   s/LaShawn R. Saulsberry
                                                                   Case Manager, (313) 234-5165