UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN FREEDOM DEFENSE
INITIATIVE, PAMELA GELLER, and
ROBERT SPENCER,

          Plaintiffs,

v.

CASE NO. 10-12134
HON. DENISE PAGE HOOD

SUBURBAN MOBILITY AUTHORITY
for REGIONAL TRANSPORTATION
("SMART"); GARY L. HENDRICKSON,
individually and in his official capacity as
Chief Executive of SMART, JOHN HERTEL,
individually and in his official capacity as
general manager of SMART and BETH
GIBBONS, individually and in her official
capacity as Marketing Program Manager
of SMART,

          Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [Dkt. No. 57], DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [Dkt. No. 58] and
DENYING DEFENDANTS' MOTION FOR LEAVE TO
FILE RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
AUTHORITY ON SUMMARY JUDGMENT [Dkt. No. 79][1]**

---

[1] Long after the Motions for Summary Judgment were filed, Defendants filed a Motion for Leave to File Response to Plaintiffs' Supplemental Authority on Summary Judgment. [Dkt. No. 79] As the Court did not rely on, nor did it find applicable to this case, the supplemental authority attached to Plaintiffs' Supplemental Authority on Summary [Dkt. No. 77], the Court DENIES Defendants' Motion for Leave to File Response to Plaintiffs' Supplemental Authority on Summary Judgment. [Dkt. No. 79]

1

## I. INTRODUCTION

Plaintiff American Freedom Defense Initiative ("American Freedom") is a non-profit "human rights organization dedicated to freedom of speech, freedom of conscience, freedom of religion, freedom from religion and individual rights." Dkt. No. 58, Ex. 7 (Geller Dep. at 15-16). Plaintiffs Pamela Geller ("Geller") and Robert Spencer ("Spencer") co-founded the organization and are Executive Director and Associate Director, respectively. Geller and Spencer engage in free speech activity through projects involving American Freedom. One such project involves posting advertisements on advertising space offered by various government transportation entities throughout the United States. American Freedom sought to place such advertising on Detroit metropolitan area buses operated by Defendant Suburban Mobility Authority for Regional Transportation ("SMART").

SMART is a governmental agency required to comply with federal and state laws, including the U.S. Constitution. At the times relevant to this lawsuit, Defendant Dennis Hertel ("Hertel") was the General Manager for SMART and Defendant Beth Gibbons ("Gibbons") was the Marketing Program Manager of SMART. Hertel had decision-making authority to accept or reject advertising pursuant to SMART's advertising guidelines. Gibbons also had decision-making authority with regard to advertisements on SMART buses.

On May 12, 2010, Plaintiffs submitted the following advertisement to SMART for display on its buses:

> Fatwa on your head? Is your family or community threatening you? Leaving Islam? Got questions? Get answers! RefugefromIslam.com

Plaintiffs assert that they entered into a contract with SMART's advertising agent to run the ad. On May 24, 2010, Defendants denied Plaintiffs' request to place the advertisement even though CBS Outdoor, Inc. ("CBS"), which administers the SMART advertising program, had determined that the proposed advertisement did not fall into a category prohibited by SMART's Restriction on Content policy. SMART's Restriction on Content policy provides:

> In order to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience, [SMART] shall not allow the following content:
>
> 1. Political or political campaign advertising.
>
> 2. Advertising promoting the sale of alcohol or tobacco.
>
> 3. Advertising that is false, misleading, or deceptive.
>
> 4. Advertising that is clearly defamatory or likely to hold up to scorn or ridicule any person or group of persons.
>
> 5. Advertising that is obscene or pornographic; or in advocacy of imminent lawlessness or unlawful violent action.

Dkt. No. 57, Ex. A at PgID 1011.

American Freedom filed this lawsuit for equitable relief alleging that SMART violated its rights under the First and Fourteenth Amendments to the United States Constitution when SMART prohibited the placement of their advertisement on SMART buses. American Freedom filed a Motion for Preliminary Injunction, which this Court granted on March 31, 2011. Dkt. No. 24. SMART appealed that decision, and the Sixth Circuit Court of Appeals reversed the Court's finding. *See American Freedom Defense Initiative v. SMART*, 698 F.3d 885 (6th Cir. 2012) ("*AFDI v. SMART*"). The Sixth Circuit made the following conclusions:

(1) "the advertising space on SMART buses is a nonpublic forum," *id.* at 892;

(2) "SMART's prohibition of political advertisements is reasonable and constitutional on its face," *id.*;

(3) "SMART's policies do not appear to have vested unbridled discretion in the decisionmakers," *id.* at 893;

(4) "the ban on political advertising was permissible," *id.* at 894;

(5) "it was reasonable for SMART to turn down the fatwa advertisement as political," *id.*;

(6) "it was reasonable for SMART to conclude that the content of AFDI's advertisement . . . is, in America today, decidedly political," *id.*;

(7) "[b]y its own admission, therefore, AFDI sought to place advertisements on the SMART vehicle to 'promote[] its political objectives,'" *id.* at 895;

(8) "AFDI understood its own advertisement to contain a political message; therefore, it would be reasonable for SMART to read the same advertisement and reach the same conclusion, *id*.;

(9) "[n]ot only was the designation of the advertisement reasonable, it was also viewpoint neutral, *id*.;

(10) the argument that AFDI "will suffer irreparable injury without the preliminary injunction, . . . is unpersuasive because the restrictions imposed on the use of a nonpublic forum are reasonable, viewpoint-neutral limits that do not deny AFDI its First Amendment rights," *id.* at 896; and

(11) "the public interest would not be served by this preliminary injunction . . . because SMART's reasonable, viewpoint-neutral limits on the use of this nonpublic forum neither violate AFDI's constitutional rights nor prevent political discussion in a public fora." *Id.*

After the case was remanded to this Court, both Plaintiffs and Defendants engaged in discovery and then filed cross-Motions for Summary Judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must

consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### III. ANALYSIS

**A. The Issues**

Plaintiffs and Defendants raise similar issues in their motions, and the Court addresses them in this one opinion. Plaintiffs state the issues as follows:

1. Whether Defendants created a public forum for the expression of a wide variety of commercial, noncommercial, public-service and public-issue advertisements, including advertisements on controversial subjects, such that their content-based restriction on Plaintiffs' message violates the First and Fourteenth Amendments.

2. Whether regardless of the nature of the forum, Defendants' content-based advertising guidelines facially and as applied to Plaintiffs' advertisement provide no objective guide for distinguishing between permissible and impermissible advertisements in a non-arbitrary, viewpoint-neutral fashion as required by the U.S. Constitution.

3. Whether Defendants' advertising guidelines facially and as applied to Plaintiffs' advertisement are viewpoint-based in violation of the First and Fourteenth Amendments.

4. Whether Defendants' advertising guidelines facially and as applied to Plaintiffs' advertisement violate the equal protection guarantee of the Fourteenth Amendment.

Defendants express the issues in this way:

1. Whether SMART, through its advertising content policy has created a non-public forum enabling it to limit the types and content of speech displayed on and in its buses.

2. Whether Plaintiffs' advertisement represents political speech that is barred by SMART's constitutional advertising content policy.

3. Whether Plaintiffs' advertisement represents speech that is likely to hold a person or group of persons up to scorn or ridicule that is barred by SMART's constitutional advertising content policy.

7

4. Whether SMART appropriately restricted Plaintiffs' advertisement under the viewpoint-neutral advertising content policy.

**B. Analysis**

There is no genuine issue of material fact that CBS accepted the American Freedom advertisement and referred it to SMART for review and a decision as to whether it was prohibited under the Restriction on Content policy. SMART ultimately determined that the American Freedom advertisement was prohibited as a political advertisement or an advertisement likely to hold up to scorn and ridicule a group of persons. American Freedom claims SMART's determination was arbitrary and capricious and in violation of American Freedom's First and Fourteenth Amendment rights.

*1. SMART'S Advertising Space is a Nonpublic Forum*

The trial court must first determine the nature of the forum before analyzing whether restrictions on advertising like that imposed by SMART in this case are constitutional. *United Food and Commercial Workers Union v. Sw. Ohio Reg'l. Transit Auth.*,163 F.3d 341 (6th Cir. 1998). Forum analysis divides forums into three categories: public forums, designated public forums and non-public forums. *Cornelius v. NAACP Legal Defense and Education Fund*, 473 U.S. 788, 800 (1985). As the Sixth Circuit stated, "the advertising space on SMART's vehicles is a nonpublic forum[.]" *AFDI v. SMART*, 698 F.3d at 892. This Court agrees.

Plaintiffs state that their advertisements, which they characterize as signs expressing religious freedom, clearly constitute protected speech. Defendants, characterizing Plaintiffs' speech as political and anti-Islam advertisement, do not expressly argue that Plaintiffs' speech is unprotected, but rely on the Supreme Court's finding that "it is undeniable of course, that speech which is constitutionally protected against state suppression is not thereby accorded a guaranteed forum on all property owned by the state." *Capital Square Review & Advisory Bd v. Pinette*, 515 U.S. 753, 761 (1995).

"The extent to which the government may regulate speech in a particular forum depends on the nature of the forum." *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841 (6th Cir. 2008). "The [Supreme] Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for [expressive] purposes." *Cornelius v. NAACP Legal Defense Fund,* 473 U.S. 788, 800. "In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of a certain subject." *Marlin v. Dist. of Columbia Bd. of Elections and Ethics*, 236 F.3d 716, 718 (D.C. Cir. 2001). The government does not create a designated public forum by inaction or by permitting limited disclosure, but by intentionally opening

a nontraditional forum for public disclosure. While operating a designated public forum, "the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includable subject." *Cornelius,* 473 U.S. at 806.

Protected speech on property determined to be either a traditional public forum or a designated public forum receives the highest level of protection. "[S]peakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. . . . Similarly, when the government has intentionally designated a place or means of communication as a public forum speakers cannot be excluded without a compelling governmental interest." *Id*. at 800. Protected speech on property determined to be a nonpublic forum receives significantly less protection. In a nonpublic forum, "the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speakers view." *Perry Educ. Ass'n v. Perry Local Educators*, 460 U.S. 37, 46 (1983).

Plaintiffs argue that, despite the Sixth Circuit's statement that it agrees SMART advertisement space is a nonpublic forum, SMART's advertising space constitutes a designated public forum, "created by government designation of a place

or channel of communication for use by certain speakers, or for the discussions of certain subjects." *Cornelius*, 473 U.S. at 802. The government's intent is discerned by examining the practice and the policy of the government to determine "whether it intended to designate a place not traditionally open to assembly and debate as a public forum." *Id*. Plaintiffs maintain that Defendants have designated its advertising space as a public forum based on explicit policy and in practice. Plaintiffs quote, in part, SMART's advertising guidelines stating that "First Amendment free speech rights require that SMART not censor free speech and because of that, SMART is required to provide equal access to advertising on our vehicles." Ex. H to Pls.' Mot. for Prelim. Inj. Defendants counter this argument, stating that the document Plaintiffs quote continues on to read "SMART has in place advertising guidelines for which all advertisements are reviewed against. Any such advertising *which does not violate the SMART advertising guidelines* or the law must be posted." *Id.* (emphasis added). Defendant SMART maintains that it runs advertisements primarily for the purpose of generating revenue in support of its mission to provide public transportation, not to encourage public debate or discussion.

To further support their argument, Plaintiffs reference an advertisement run by an atheist organization reading: "Don't believe in God? You're not alone." Defendants characterize the advertisement as "purely religious" in nature, and not in violation of SMART's content restriction policy. Further, the advertisement was not

11

inviting debate over the existence of God, but rather promoting the organization sponsoring the advertisement. However, the policy does not delineate what renders an advertisement as "purely religious," as opposed to political or likely to hold up to scorn or ridicule any person or groups of persons. Plaintiffs have not supported their claim that the bus sides and inside overhead spaces on SMART buses constitutes anything other than a nonpublic forum.

Accordingly, this Court concludes that there is no genuine issue of material fact that the space for advertising on SMART buses is a nonpublic forum.

2. *The Restriction on Content Policy is Reasonable*

Once a court designates a forum as nonpublic, the restrictions placed on the space are constitutional if they are reasonable and viewpoint neutral. *Pleasant Grove City v. Summum*, 355 U.S. 400,470 (2009). Protected speech on property determined to be a nonpublic forum receives significantly less protection than protected speech on a public forum or designated public forum. For the reasons that follow, the Court finds that SMART's advertising restrictions are facially reasonable.

In analyzing whether a First Amendment violation has occurred in a nonpublic forum, the Court employs a rational basis review, rather than strict scrutiny. *See Perry Educ. Ass'n*, 460 U.S. 46. "Control over access to nonpublic forum can be based on subject matter and speaker identity, so long as distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral;

*i.e.*, government's decision to restrict access in nonpublic forum need only be reasonable." *Cornelius*, 473 U.S. at 806; *see also Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. at 819, 820 (the regulation of speech in a nonpublic forum must be "reasonable in light of the purposes served by the forum."). The decision "need not be the most reasonable or the only reasonable limitation . . .[A] finding of strict incompatibility between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated." *Cornelius*, 473 U.S. at 808 (1985).

In this case, SMART's stated mission is to provide public transportation throughout Wayne, Macomb, Monroe, and Oakland counties. Defendants argue that, given this mission, their Restriction on Content policy is both reasonable and constitutional. The Sixth Circuit agreed, stating:

> First, SMART's prohibition of political advertisements appears reasonable and constitutional on its face. . . . SMART reasonably concluded that permitting any political advertisement could interfere with the forum's revenue generating purpose. It was generally permissible, in other words, for SMART to permit commercial and public service ads, but to turn down political ads.
>
> Assuming, this is so, it necessarily follows that such distinctions must be made on an ad-by-ad basis, and that some cases will be close. . . . However, merely because it is sometimes unclear whether an ad is political does not mean the distinction cannot be drawn in the case of a non-public forum. . . . Otherwise, as a practical matter, a non-public forum could never categorically exclude political speech.

*AFDI v. SMART*, 698 F.3d at 893 (internal quotes and citations omitted).

The Sixth Circuit expressed that its reasoning was consistent with *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969), where the Supreme Court found unconstitutional ordinances that left unbridled discretion in the hands of a government agency or official. The Sixth Circuit stated, "SMART's advertising rules guide officials in distinguishing between permissible and impermissible advertisement in a non-arbitrary fashion. The rule in question prohibits '[p]olitical or political campaign advertising.' . . . [T]here is no question that a person of ordinary intelligence can identify what is or is not political." *AFDI v. SMART*, 698 F.3d at 893. The Court finds, as the Sixth Circuit concluded, that there was no unbridled discretion left in the hands of SMART officials. *Id.* ("SMART's policies do not appear to have vested unbridled discretion in the decisionmakers in the manner contemplated by *Shuttlesworth*.").

*3. SMART's Restriction on Content Policy is Viewpoint Neutral*

Defendants argue that their policy is viewpoint neutral even though there is nothing other than the Restriction on Content policy that can guide a government official to distinguish between permissible and impermissible advertisements in a non-arbitrary fashion.[2] If this Court follows the lead of the Sixth Circuit in this case,

---

[2] Gibbons testified that there were no other written guidelines or manuals available, aside from the guidelines found in the contract between SMART and CBS. She further testified that, while another advertisement involving atheism was purely religious, rather than political, there was no manual or language that set forth what distinguished a political advertisement from a religious advertisement.

14

as Defendants argue the Court must do, no other manual or direction on the determination of whether an advertisement is political or not is required. Defendants response to Plaintiffs' examples of other advertisements permitted by SMART support Defendants' claim that those advertisements were different in that they were religious or not so clearly political and that SMART had specifically determined whether to place the advertisements on an "ad-by-ad" basis as the Sixth Circuit suggests. Just viewing the advertisement and the underlying goals of American Freedom, an ordinary person could conclude that the advertisement was political and that American Freedom was using the advertisement to advance its political objectives.

Under Sixth Circuit law, "[t]he absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors." *United Food*, 163 F.3d at 359. "[T]he limits the [government] claims are implicit in its law [must] be made explicit by textual incorporation, binding judicial or argue administrative construction, or well-established practice." *Id.* (internal citations omitted).[3]

---

[3] The Court notes the process by which American Freedom's advertisement was reviewed was not without some contradiction in the decision-making process on the part of SMART, which could give the impression of arbitrariness. As Gibbons testified in her capacity as an authorized representative of SMART pursuant to Fed. R. Civ. P. 30(b)(6), the Restriction on Content policy does not distinguish between political or non-political advertising, but each advertisement is reviewed independently for such a determination to be made. When the advertisement at issue

Defendants argue that their case is analogous to *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974), in which the Supreme Court held that the city's refusal to accept political advertising did not result in a First Amendment violation. The advertisement in *Lehman* was clearly political advertising, promoting a specific candidate for an upcoming election. There was "uncontradicted testimony at the trial that during the 26 years of public operation, the Shaker Heights system, pursuant to city council action, had not accepted or permitted any political or public issue advertising on its vehicles." *Id*. at 301-02.

Defendants argue that is the same for SMART and highlight another instance of excluding a political advertisement. The Sixth Circuit, when reversing this Court's order for preliminary injunction, found that SMART's Restriction on Content "policy serves a viewpoint neutral purpose as in *Lehman* and does not run afoul of the problems with the partial bans on political advertisements in *United Food*[.]" *AFDI v.* SMART, 698 F.3d at 892. Although there is no long history of SMART's decisions, and the advertisement in *Lehman* would be more likely covered under SMART's restriction on political campaign advertising, the Court finds that *Lehman* generally supports SMART's position. The Court's conclusion echoes the Sixth Circuit's determination that Defendants' actions were viewpoint neutral. *Id.* at

---

was initially reviewed, the determination was made that it was a political advertisement. However, when asked about the advertisement during the hearing, Gibbons offered inconsistent testimony, which is likely the reason Hertel, Gibbons' superior, made the final decision.

16

895 ("Not only was the designation of the advertisement reasonable, it was also viewpoint neutral.").

*4. American Freedom's Advertisement was Political*

The Court finds that there is no question of fact that the American Freedom advertisement is political in nature. The Court's finding is consistent with, and is based upon, the Sixth Circuit's conclusions in this case, including the following:

(a) "it was reasonable for SMART to turn down the fatwa advertisement as political";

(b) "it was reasonable for SMART to conclude that the content of AFDI's advertisement . . . is, in America today, decidedly political";

(c) "[b]y its own admission, therefore, AFDI sought to place advertisements on the SMART vehicle to 'promote[] its political objectives'"; and

(d) "AFDI understood its own advertisement to contain a political message; therefore, it would be reasonable for SMART to read the same advertisement and reach the same conclusion."

*AFDI v. SMART*, 698 F.3d at 893-95.

*5. The SMART Guideline Restricting Scornful Speech is Not in Violation of the Constitution*

Although SMART prevails on its decision to restrict American Freedom's advertisement because of its political nature, the Court addresses the issue of refusal of the advertisement under Defendants' restriction for scorn or ridicule of a group of persons. Plaintiffs argue that the application of the SMART guideline restricting advertising that is "likely to hold up to scorn or ridicule any person or group of

17

persons" is also subject to the same arguments they make about political speech. For support, they rely on Gibbons' testimony that she could not determine whether the advertisement was scornful. Plaintiffs argue the advertisement is not intended to "mock or make fun of anyone"; that it "addresses a serious issue." Plaintiffs include a number of real and hypothetical examples, questioning whether such advertisements subject a person or group to scorn or ridicule.

Defendants respond in the same vein, citing the testimony of Geller that she fashioned the advertisement after a message proposed by the Islamic Circle of North America (this advertisement was not submitted to SMART but ran in other communities on similar transit systems.) Defendants argue the American Freedom advertisement parodied the Islamic Circle advertisement and denigrated its advertisement. Defendants also argue that the language of American Freedom's advertisement implies that Muslim families threaten their daughters and that the website included on the advertisement refers to the need for "refuge" when leaving Islam. Defendants support their explanation for determining that the message of American Freedom's advertisement holds a group of people up to scorn. Plaintiffs do not dispute that their advertisement was an impetus for the advertisement submitted to SMART. Applying the same analysis to determine whether the advertisement was arbitrarily or capriciously restricted, as noted above in the

analysis for political advertisements, the Court finds there is no violation of Plaintiffs' constitutional rights.

### 6. Conclusion

For the reasons stated above, the Court concludes that "SMART's reasonable, viewpoint-neutral limits on the use of this nonpublic forum neither violate [American Freedom's] constitutional rights nor prevent political discussion in public fora." *Id.* at 896. Plaintiffs' First Amendment claim is dismissed. Defendants' Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment is denied.[4]

---

[4] Plaintiffs also argued that Defendants' speech restriction violates the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment "protects against invidious discrimination among similarly situated individuals or implicating fundamental rights." *Satawa v. Macomb Cnty. Road Comm'n*, 689 F.3d 506, 528 (6th Cir. 2012) (quotations omitted). "[U]nder the Equal Protection Clause ... government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Id.* (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972)). "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by the government decision-makers." *Miller v. City of Cincinnati*, 622 F.2d 524, 538 (6th Cir. 2010) (quotation omitted). Strict scrutiny is appropriate only if a classification "infringes on a class of people's fundamental rights [or] targets a member of a suspect class." *Id*.

The analysis by Plaintiffs on this claim was at best, cursory. Plaintiffs merely argued that Defendants discriminated against Plaintiffs in violation of the Equal Protection Clause because their advertisement is "politicized" or its viewpoint "scornful." Plaintiffs did not carry their burden by providing any specific evidentiary support on the threshold element of an equal protection claim–disparate treatment. *See Scarbrough v. Morgan County Bd. of Educ.,* 470 F.3d 250, 259 (6th Cir. 2006). Plaintiffs did not address the issue of the "classification" used by the decision-makers. Because Plaintiffs did not raise any argument as to the classification used by Defendants, Plaintiffs failed to carry their burden that strict scrutiny must be used in analyzing Plaintiffs' equal protection claim.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment [Dkt. No. 57] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [Dkt. No. 58] is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File Response to Plaintiffs' Supplemental Authority on Summary Judgment [Dkt. No. 79] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' cause of action is DISMISSED WITH PREJUDICE.

IT IS ORDERED.

                                     s/Denise Page Hood
                                     DENISE PAGE HOOD
Dated: March 22, 2019         CHIEF UNITED STATES DISTRICT JUDGE

---

Plaintiffs' Motion for Summary Judgment as to the equal protection claim is denied since Plaintiffs failed to carry their burden on the required elements to establish such a claim. The Equal Protection Claim is dismissed.